LEWIS v. STROM.

(Court of Appeals of District of Columbia. Submitted November 15, 1922. Decided January 2, 1923.)

No. 1513.

1. Patents ⬤⟳91(1)—Burden of proof in interference is on junior party.

In interference proceedings, the burden of proof is on the junior party.

2. Patents ⬤⟳91(4)—Evidence held to show invention originated with senior applicant.

In interference proceedings between an employer, who was the junior applicant, and an employee, who was the senior, where the sole question involved was as to which originated the invention, evidence held to show

that the employer merely suggested the necessity of the machine without any definite idea as to how it should be constructed, so that the invention belonged to the employee.

**3. Patents ⊝93—Employer does not get benefit, unless he communicated general principle to employee.**

The rule that one who employs another to perfect the details of an invention of which he has conceived the general principle or plan is entitled to the benefit of the other's work does not apply, where the proof fails to show that the employer had conceived the general principle, or, if he did, that he communicated it to the employee.

Appeal from the Commissioner of Patents.

Interference proceedings between Israel Lewis and Eric O. Strom. From a decision awarding the invention to Strom, the senior applicant, Lewis, the junior applicant, appeals. Affirmed.

Theodore K. Bryant, of Washington, D. C., for appellant.

Before SMYTH, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

SMYTH, Chief Justice. An interference was declared between the respective applications of Lewis and Strom. It concerns a machine for individually wrapping articles, such as cigars, in tissue paper. There are eleven counts in the interference, which are sufficiently illustrated, so far as our purpose is concerned, by count 1. It reads as follows:

A devise for individually wrapping articles, comprising a combination, a pair of supporting rolls, a coacting presser roll thereabove, a belt running with constant tension and contact over all of said rolls, a driving roll for imparting continuous motion to said belt, and means for yieldably suspending said presser roll so as to enable it to recede from said supporting rolls by the insertion therebetween of an article with its wrapper and the retraction of the wrapped article therefrom.

[1] The question involved is one of originality and depends for its solution on matters of fact. The burden of proof is on Lewis, he being the junior party. Each of the three tribunals of the Office held that he had failed to sustain it, and they decided in favor of Strom.

[2] Lewis, at the time of the invention, was a cigar manufacturer. It is conceded in his brief that he was not a skilled mechanic or a machinist in any sense of the words, although it is claimed for him that his 40-odd years of experience as a cigar manufacturer had familiarized him, to a greater or lesser extent, with the machines used in his business.

Strom was an employee of Lewis', having entered his service as a simple mechanic. After some time, on account of his fitness, he was advanced to the position of foreman over other mechanics who had been longer in Lewis' employ. He had attended a vocational school, knew drafting and the designing of machines and machine parts. Shortly after the structure in question was invented, he invented a stogie washing machine, and some 4 years later a dust collector. This tends to show that he possessed in some degree the inventive faculty.

Lewis does not claim to have imparted to Strom directly the con-

cept of the invention, but says that he disclosed it to his superintendent, Pearson, who in turn communicated it to Strom. The only conversation relative to it which he says he had with Strom before the invention was perfected concerned the shifting of a roller, and as to this he is not corroborated. Pearson testified that he and Lewis commenced to talk about the invention in September, 1913, and fixes the time by reason of the fact that he attended a machinists' convention in the same month of that year. Before that he had not heard of such a machine. When asked to state what Strom had to do with the machine, he said, in substance, that it was his duty to carry out his (Pearson's) instructions; that he told him to use certain material in the factory for side plates, and that he explained "on that piece of paper how" he wanted it made. But the paper was not identified by him. He claims to have made certain suggestions of his own which tend to indicate a belief on his part that he, as well as Lewis, contributed to the result. To a slight extent his testimony is corroborated by employees of Lewis'. They say that Pearson and Strom worked together over drawings which they believed related to the machine. Suppose they did, it would not establish that Lewis, either directly or through Pearson, disclosed to Strom the specific means which he was to employ in working out the invention.

On the other hand, Strom testified that Pearson stated to him in September, 1913, at the supper table in Strom's house, where Pearson was a boarder, and while Strom's family was present, that Lewis wanted a machine made for wrapping cigars in tissue paper; that he gave him no particulars whatever; that he said their present method of wrapping cigars was slow and tedious; that the operators wore out their finger tips in twisting the loose ends of the wrapper between their fingers, and he asked:

"If I [Strom] could make a machine to do the thing they wanted, and I told him that I could make a machine, but that I had to have the time to study it up and see what I could do in that respect. * * * He told me to go ahead and see what I could do."

This testimony of Strom is corroborated in part by one witness and wholly by two witnesses, one of whom was entirely disinterested. She was at the time of the conversation a high school student, and when giving her testimony was employed as a bookkeeper. She was candid, intelligent, and positive. We cannot refuse her testimony credence. The story she related is entirely inconsistent with Lewis' theory, namely, that he, through Pearson, conveyed the inventive concept to Strom. Pearson does not deny the conversation related by her. True, he says that he gave his first instructions to Strom in the machine shop. In so far as this is inconsistent with her statement, it may be regarded as a denial; but we do not think that as such it is entitled to much weight. He does not say what the instructions were. They may have been in complete harmony with what he said to Strom at the supper table.

Following Pearson's direction to him to go ahead, Strom says he developed the invention at his home in his spare time, made sketches of it, showed them to Pearson, and discussed them with him. The first

machine embodying the invention was built by him in the Lewis factory, work having been commenced on it about two months after Pearson's request to undertake the work. In the meantime, as we have just stated, he was studying the problem.

Strom's fourth witness gave testimony touching his work on the machine which tends to support his right. When Strom asserted to Lewis that the invention was his, Lewis testified that he was surprised, but did not deny Strom's claim. A board containing a layout was submitted in evidence. Strom says that the layout was his, and Lewis does not deny it.

We do not doubt that Lewis and Pearson discussed the necessity of a machine which would do what was then being done by hand in the wrapping of cigars, but we do not believe that Lewis had any definite notion as to how such a machine should be organized.

[3] Counsel for Lewis cite cases to the effect that, where one employs another to perfect the details of an invention of which he has conceived the general principle or plan, he is entitled to the benefit of the other's work. We do not deny the principle, but it is not applicable. The proof here fails to show that Lewis, the employer, had conceived the general principle or the plan, or, if he did, that he communicated it to Strom.

The invention is Strom's, and he is entitled to it. Consequently, the decision of the commissioner is affirmed.

Affirmed.